IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

Roberto BENITEZ-NAVARRO, et al.,

    Plaintiffs,

    v.

Evaristo GONZALEZ-APONTE, et al.,

    Defendants.

Civil Action No. 09-1366 (GAG)

## OPINION AND ORDER

    This matter is before the court on various defendants' motions to compel arbitration and dismiss the action. (Docket Nos. 38, 39, 56, 59.) Plaintiffs Roberto Benítez-Navarro, Edith Perales Rodriguez and the Roberto and Edith Benítez Conjugal Partnership commenced this action after Plaintiffs allegedly suffered pecuniary losses as a result of an alleged misrepresentation by defendant Evaristo González-Aponte in the management of funds which were to be deposited into a Knights of Columbus retirement annuity plan.

    Co-defendants (1) Knights of Columbus; (2) the Supreme Council of the Knights of Columbus; (3) Miguel Ramos-Díaz; (4) the alleged Ramos-Ramos conjugal partnership; (5) Joe Martínez Jr.; (6) the alleged Martínez-Doe conjugal partnership; (7) Carl A. Anderson; (8) the alleged Anderson-Anderson conjugal partnership; (9) James DiVasto; and (10) the alleged Divasto -Doe conjugal partnership (collectively, the "Knights Defendants") moved to dismiss pursuant to Section 4 of the Federal Arbitration Act, 9 U.S.C § 4, ("FAA") compelling arbitration of plaintiffs' claims. (See Doc. 38.)  Further, the Knights Defendants, joined by co- defendants Popular, Inc ("Popular"); Doral Bank ("Doral"); Westernbank Puerto Rico ("Western"); and RG Premier Bank ("RG") moved for dismissal based on a lack of federal jurisdiction. (Doc. Nos. 39, 56, 59, 63.)

    After reviewing the pleadings and pertinent law, the court **GRANTS** the defendants' motion to compel arbitration and consequently **GRANTS** the defendants' motions to dismiss based on lack

**Civil No. 09-1366 (GAG)**                                          2

of jurisdiction.

## I.     Standard of Review

Under the Federal Arbitration Act, "[i]f suit is brought in a U.S. Court with regards to a claim which according to an arbitration agreement should be referred to arbitration, the Court must, upon request to that effect by one of the parties, stay the action until arbitration has concluded." Sanchez-Santiago v. Guess, Inc., 512 F.Supp.2d 75, 78 (D.P.R.2007); see also 9 U.S.C. § 3. In order to obtain an order compelling arbitration, the party seeking the order, must establish "that a valid agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope." InterGen N.V. v. Grina, 344 F.3d 134, 142 (1st Cir.2003).

Under Rules 12(b)(1) and 12(b)(6), a defendant may move to dismiss an action against him for lack of federal subject-matter jurisdiction or for failure to state a claim upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(1); Fed. R. Civ. P. 12(b)(6).  When considering a motion to dismiss, the court must decide whether the complaint alleges enough facts to "raise a right to relief above the speculative level." See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007).  The court accepts as true all well-pleaded facts and draws all reasonable inferences in the plaintiff's favor. See id.; Parker v. Hurley, 514 F.3d 87, 90 (1st Cir. 2008). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged –but it has not 'show[n]'– 'that the pleader is entitled to relief.'"  Iqbal, 129 S. Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)).

## II.    Relevant Factual & Procedural Background

The following factual summary is taken from Plaintiffs' complaint (Docket No. 1). Plaintiffs purchased and acquired a retirement annuity plan from Knights of Columbus on October 22, 2001 through its agent Ramos-Díaz. (Id. at ¶ 19.)  Plaintiffs also purchased and acquired a life insurance

**Civil No. 09-1366 (GAG)**                                 3

policy from Knights of Columbus on October 24, 2001 through Ramos-Díaz. (Id. at ¶ 20.) From April 23, 2004 through October 9, 2007, Plaintiffs deposited various checks with Knights of Columbus for investment, for which defendant González-Aponte, an agent for Knights of Columbus, issued receipts in the name of Knights of Columbus. (Id. at ¶ 21.) The total amount of funds deposited by Plaintiffs with Knights of Columbus during this period was $285,500.00. (Id.)

At all times, defendant González Aponte presented himself to Plaintiffs as an authorized agent of Knights of Columbus, with the credentials, uniform and documentation that supported this representation. (Id. at ¶ 34.) Unbeknownst to Plaintiffs, defendant González-Aponte was no longer an authorized agent of Knights of Columbus, nor was he registered as an agent with the Office of the Commissioner of Insurance of Puerto Rico, when he issued the Certificate of Deposit allegedly guaranteed by "Knights of Columbus." (Id. at ¶ 23.) The Knight Defendants failed to notify Plaintiffs of the fact that González-Aponte was no longer authorized to represent Knights of Columbus. (Id. at ¶ 27.) The Knight Defendants knew, or by exercising reasonable care should have known, that González-Aponte was still in contact and dealing with Plaintiffs representing himself as an authorized agent of Knights of Columbus. (Id. at ¶ 28.)

Defendant Ramos-Díaz informed Plaintiffs through an email dated May 8, 2008, that defendant González-Aponte allegedly used some of the funds he received from Plaintiffs to make loans to various unknown defendants. (Id. at ¶ 32.) Defendant González-Aponte also deposited Plaintiffs' checks in various accounts with PI and RG instead of remitting them to Knights of Columbus for investment in the Church Loan Fund or the Retirement Annuity. (Id. at ¶ 24.) Defendants PI and RG allowed defendant González-Aponte to deposit Plaintiffs' funds in Knights of Columbus accounts or defendant González-Aponte's personal accounts without the necessary endorsements. (Id. at ¶ 25.)

Plaintiffs filed suit on April 21, 2009, alleging twelve causes of action against the abovementioned defendants resulting from the injuries alleged. (Id. at ¶¶ 35-68.) On June 29, 2009, the Knight Defendants moved to compel arbitration based upon a clause found in the contracts which

**Civil No. 09-1366 (GAG)**                4

incorporated a document that prescribed the sole means to present and resolve grievances resulting from ownership of Knights of Columbus financial products. (See Docket No. 38.) Based upon the applicability of this arbitration clause, both the Knight Defendants as well as the other co-defendants (Popular, Doral, Western, RG) moved to have the remaining cases against them dismissed for lack of jurisdiction. (See Docket Nos. 38, 39, 56, 59, 63.)

**III.   Legal Analysis**

     **A**.   **Motion to Compel Arbitration**

Knights Defendant's argue that Plaintiffs' claims should be dismissed because all of the claims against them must be submitted to arbitration as required by the Dispute Resolution Clause ("DRC") found in Section 86 of the Laws Governing Supreme Council of the Knights of Columbus ("By-Laws").[1] Knight Defendant's further contend that the Plaintiffs subjected themselves to governance under this arbitration clause by knowingly signing the contracts containing the statements which incorporated the By-Laws by reference.[2]

Under the FAA, 9 U.S.C. § 1, a written agreement to arbitrate a dispute arising out of a "transaction involving commerce" is judicially enforceable. Medika Int'l, Inc. v. Scanlan Intern, Inc., 830 F. Supp. 81, 84 (D.P.R. 1993). The Supreme Court has consistently favored arbitration

---

[1] As stated in sub-section 86(a), the purpose of the Dispute Resolution Clause is:

> to prescribe the sole means to present and resolve grievances, complaints and disputes between members, certificate or policy owners or beneficiaries and the Order or its directors, officers, agents and employees relating to the Order's financial benefit products (for instance, benefit certificates or policies, and annuities). Procedures set forth in this section are meant to provide prompt, fair and efficient opportunities for dispute resolution consistent with the fraternal nature of the Order without the delay and expense of formal legal proceedings. (See KofC 60.)

[2] The clause in the contract incorporating the use of the By-Laws states, "I agree that the Constitution and the Laws of the Knights of Columbus in effect or approved hereafter, including any change in the method or quantity of insurance premiums will bind the beneficiary and me." (See KofC 9, 28, and 49.)

**Civil No. 09-1366 (GAG)**                                  5

when facing an issue concerning the arbitrability of a dispute. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25. "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Id.

"A party who attempts to compel arbitration must show that [1] a valid agreement to arbitrate exists, [2] that the movant is entitled to invoke the arbitration clause, [3] that the other party is bound by that clause, and that [4] the claim asserted comes within the clause's scope." InterGen N.V., 344 F.3d at 142. The court must first look to a valid contract to determine if it contains an arbitration clause. Once such a clause is found to exist the court must then determine whether the dispute arising under the contract falls within the scope of the arbitration clause. Cardona Tirado v. Shearson Lehman Am. Express, Inc., 634 F. Supp. 158, 159 (D.P.R. 1986). If a valid clause is found, and the controversy in fact falls under the scope of the clause, the court will direct the parties to proceed to arbitration unless the party compelling arbitration has waived the right to do so, or there exists grounds for revocation of the contractual agreement. See Combined Energies v. CCI Inc., 514 F.3d 168, 171 (1st Cir. 2008) (quoting Bangor Hydro-Elec. Co. v. New Eng. Tel. & Tel. Co., 62 F.Supp.2d 152, 155-56 (D.Me.1999)); see also 9 U.S.C. § 2.

In the present case, the existence of the arbitration clause is not in dispute. The clause is clearly stated in the Knights of Columbus "Laws Governing Supreme Council " ("By-Laws"). Co-plaintiff Roberto Benítez-Navarro also admits that the contracts exist and that he and his wife signed the agreements encompassing the By-Laws by reference. Plaintiffs' claim that they are not subject to arbitration rests upon the fact that they were not aware of the contents of the By-Laws, which were incorporated by reference into the contracts for the financial products, and therefore never agreed to waive their rights to litigate their claims.

To determine whether a valid agreement to arbitrate exists, First Circuit precedent requires that the court must first turn to state contract law. Sanchez-Santiago v. Guess, Inc., 512 F.Supp.2d 75, 79 (D.P.R 2007). Under the contract law of Puerto Rico, consent to a contract is void only if

**Civil No. 09-1366 (GAG)**                                   6

"given by error, under violence, by intimidation, or deceit." 31 P.R. Laws Ann. § 3404. Plaintiffs' contention of ignorance of the existence of the By-Laws, as well as their claim that they received no information pertaining to their existence, does not meet any of the stated elements necessary to find a contract voidable under Puerto Rican law. Therefore, the court finds that Plaintiffs entered a valid binding agreement which encompassed the DRC as incorporated by reference in the contract. In Rivera v. Centro Medico de Turabo, the First Circuit recognized that, "[a]bsent fraud, a person is deemed to know the contents of a contract that he or she signs. . . . Thus whether plaintiffs actually knew of the arbitration clause in their contracts is irrelevant; that knowledge is imputed as a matter of law." 575 F.3d 10, 20-21.[3] As pointed out by the Knights Defendants, this presumption applies even when the signed document "incorporate[s] by reference" an arbitration provision "that may be found" in another document, "irrespective of whether [the party] received a copy of the document" containing the clause. See Steelmasters, Inc. v. Local Union 580 of Int'l Ass'n of Bridge, Structural, Ornamental and Reinforcing Iron Workers, 2008 WL 312096 at *4 (E.D.N.Y).

Arbitration clauses are regularly incorporated by reference. See 1 Domke on Commercial Arbitration § 8:5. "An arbitration provision need not be contained in the parties' contract, but may be provided for in the contract by reference to outside documents . . . . [This] reference is generally sufficient to bind the parties to future arbitration." Id. Other circuit courts have repeatedly held that

---

[3] While Plaintiffs have noted the distinguishing factors of this case, specifically the courts vivid depiction of the forum selection clause at issue in Rivera (Docket No. 80 at 3), Plaintiffs' claims still do not demonstrate the level of "overreaching" that is required to overcome the presumption that a party has a full understanding of the contract which they have signed. As the Knights Defendants have noted in their reply brief, even if such knowledge of the underlying contract is not imputed as a matter of law, Section 3619 of the Puerto Rico Insurance Code, 26 P.R. Stat. Ann. §3619 (2007), provides that the bylaws of fraternal benefit societies, such as the Knights of Columbus, are part of their insurance contracts and that any amendment to the bylaws shall bind the members as though such an amendment had been made prior to the application for benefit membership. (Docket No. 80 at 5). See also 1 Domke on Commercial Arbitration § 10:2 (recognizing that "[a]n arbitration provision later added to the bylaws of an association may be binding on all members when notice of the revision of the bylaws was duly given so that a member could have protested the inclusion of the new provision.") (footnotes omitted).

**Civil No. 09-1366 (GAG)**  7

a contract need not contain an explicit arbitration clause if such a clause is validly incorporated by reference to a clause in another document. See R.J. O'Brien & Assoc, Inc. V. Pipkin, 64 F.3d 257, 260 (7th Cir. 1995) (citing corresponding cases from surrounding circuit courts); Progressive Casualty Ins. Co. v. C.A. Reaseguradora Nacional, 991 F.2d 42, 48 (2d Cir.1993) (holding "that a broadly-worded arbitration clause which is not restricted to the immediate parties may be effectively incorporated by reference into another agreement."); see also Gelderman, Inc. v. CFTC, 836 F.2d 310, 318 (7th Cir. 1987) (holding that "a written agreement to observe and be bound by the Charter, Rules and Regulations of the Association, and all amendment subsequently made thereto constituted a consent to be bound by arbitration procedures later adopted by the Association.") (quotation omitted). Although Plaintiffs may not have been aware of the contents of the By-Laws, they were aware of the contractual clause which incorporated them by reference. The court finds that this knowledge alone is sufficient to find that Plaintiffs knowingly agreed to the terms found in the contracts for financial products.

Therefore, based on the above analysis, the court finds that Plaintiffs' lack of knowledge of the incorporated document at the time they signed the contracts for the financial products does not invalidate their agreement to subject their contractual relationship to the rules of the DRC as found in the Knights of Columbus By-Laws.

Plaintiffs further contend that even if they are in fact subject to the arbitration clause, the language of the DRC is not broad enough to encompass the underlying dispute in this case. "Whether a claim falls within the reach of a particular arbitration clause is a question for the district court to determine initially as a matter of law." Combined Energies v. CCI Inc., 514 F.3d 168, 171 (1st Cir. 2008); see also Acevedo Maldonado v. PPG Indus., Inc., 514 F.2d 614, 616 (1st Cir. 1975). The Supreme Court has declared that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration [when] the problem at hand is the construction of the contract language." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc., 473 U.S. 614, 626 (1985); see also Unionmutual Stock Life Ins. Co. v. Beneficial Life Ins. Co., 774 F.2d 524, 528 (1st Cir.1985) (applying federal presumption in favor of arbitration).

**Civil No. 09-1366 (GAG)**                                     8

Plaintiffs argue that their claims arise from Defendants' breach of their obligations under the Certificate of Deposit and through the fraud and misrepresentation used by the defendants with regard to the Certificate of Deposit to illegally appropriate Plaintiffs' funds. (Docket No. 73 at 6.) It is Plaintiffs' contention that the Certificate of Deposit which they base their suit upon is not subject to the alternative dispute resolution procedures as described in the DRC. Plaintiffs assert that only claims that arise out of the annuity and life insurance contracts should be subject to the arbitration provisions, thus permitting them to resolve their claims through litigation.

Contrary to Plaintiffs' contention, the court finds that the language of the DRC is sufficiently broad to encompass the causes of action pleaded in Plaintiff's complaint.[4] The DRC is composed of broad descriptive terminology which characterize its scope as encompassing "all claims, actions, disputes and grievances of any kind or nature whatsoever relating to the Order's financial benefit products" and "[i]t includes, but is not limited to . . . claims based on fraud [or] misrepresentation . . . ." The First Circuit has declared that "[b]road language of this nature covers contract-generated or contract-related disputes between the parties however labeled: it is immaterial whether claims are in contract or in tort . . . ." Acevedo Maldonado v. PPG Industries, Inc., 514 F.2d 614 at 616. Further, whether a particular claim is arbitrable or not does not "turn on the label-'tort or 'contract'-a party chose to affix to the claim." Combined Energies v. CCI, Inc., 514 F.3d at 172 (quoting Kiefer Specialty Flooring, Inc. v. Tarkett, Inc., 174 F.3d 907, 910 (7th Cir.1999)). As noted by the Knights Defendants, the Supreme Court has held that the use of such all-inclusive language in arbitration

---

[4] The DRC found in Section 86 (b) of the Laws governing Supreme Council states:

> Scope. [this section] applies to all claims, actions, disputes and grievances of any kind or nature whatsoever relating to the Order's financial benefit products. It includes, but is not limited to, claims based on breach of benefit contract, as well as claims based on fraud, misrepresentation, violation of statute, discrimination, denial of civil rights, conspiracy, defamation, and infliction of distress against the Order or its directors, officers, agents, or employees. (See KofC 60.)

**Civil No. 09-1366 (GAG)**                                         9

provisions subjects any dispute between the parties to arbitration as "[t]here is nothing to limit the sweep of this language or to except any dispute or class of disputes from arbitration." Int'l Union of Operating Eng'rs v. Flair Builders, Inc., 406 U.S. 487 (1972). This broad interpretation has been followed by numerous circuit court decisions. See, e.g., Brown v. ITT Consumer Fin. Corp., 211 F.3d 1217, 1221 (11th Cir. 2000) (arbitration clause covering "any dispute" includes all parties claims against each other); Cara's Notions, Inc. v. Hallmark Cards, Inc., 140 F.3d 566, 571 (4th Cir.1998)(clause covering "any controversy or claim" relating to "any aspect of relationship between parties" establishes that arbitration clause was meant to apply to all conflicts, not just those regarding particular contract). All of Plaintiffs' claims arise from the alleged fraudulent and negligent actions perpetrated by the defendants in the procurement of financial products. Each of these alleged actions occurred as a result of the "contract-generated" relationship between plaintiffs and the defendants created under the contracts for financial products. Therefore, the court finds that any dispute arising between the two parties relating to any financial products would fall under the umbrella of the DRC.

Given the broad language utilized in the arbitration clause as well as the strong federal presumption to interpret language in favor of arbitration, the court finds that the dispute in this case does in fact fall under the scope of the DRC and therefore finds that it does encompass Plaintiffs' claims.

Plaintiffs further contend that the arbitration clause is unenforceable upon them because of contract defenses such as fraud, duress, and unconscionability. (Docket No. 73 at 7.) An arbitration provision is valid unless it is procedurally and substantively unconscionable. See Rivera v. Centro Médico de Turabo, 575 F.3d at 18. As The Knights Defendants cite, The First Circuit declared in Rivera that, "a contract is voidable (and thus unenforceable) 'if a party's manifestation of assent is induced by either fraudulent or material misrepresentation by the other party upon which the recipient is justified in relying.'" Id. at 20 (referencing forum selection clause). While the actions taken by some of the stated defendants in this litigation may be considered unconscionable, Plaintiffs point to no concrete set of facts demonstrating any procedural or substantively unconscionable acts that occurred during the formation of the contractual relationship that bound Plaintiffs to the

**Civil No. 09-1366 (GAG)**                    10

arbitration agreement. They do not plead the existence of any fraudulent statement or material misrepresentation made by the Defendants that influenced their decision to enter the contractual relationship.[5] Plaintiffs assertion that they were unaware of the existence of the By-Laws of the Knights of Columbus does not rise to the level necessary to negate their contractual obligation to subject their claims to arbitration. See Tarulli v. Circuit City Stores, Inc., 333 F. Supp.2d 151, 157-58 (S.D.N.Y. 2004) (recognizing that the contention that an arbitration agreement was procedurally unconscionable because plaintiff was not given a copy of the incorporated arbitration rules "holds no weight").

Therefore Plaintiffs' argument that they are not bound to their contractual agreement based upon various contract defenses fails. Plaintiffs are, thus, bound by the arbitration clause expressed in the DRC.

Plaintiffs argue that the Knights Defendants should be estopped from compelling arbitration through the doctrine of waiver. Plaintiffs aver that the Knights Defendants waived the applicability of the DRC because "nobody from the Knights of Columbus ever mentioned anything to them with regards to any DRC, any steps, or any need for arbitration of the dispute." (See Docket No. 73 at 11). The First Circuit has laid out a number of factors which are traditionally applied when considering

---

[5] In their brief, Plaintiffs point to the relatively disparate bargaining powers of the two parties in asserting that they could not have expressly agreed to arbitrate their claims. (See Docket No. 84 at 2.) While it may be true that the parties were not on equal bargaining grounds, there is no evidence presented that the Knights Defendants used this bargaining advantage to "overreach" in the contract negotiations. In Rivera the court held that the presumption in favor of enforcing the contractual agreement is a difficult presumption to overcome. 575 F.3d at 22. Here, although this clause was incorporated by reference, the Plaintiffs had the similar opportunity to review the Bylaws of the Knights of Columbus as well as consult an attorney about their implications. Similarly, Plaintiffs also had the option of purchasing different "financial products." "[T]he examination of the circumstances surrounding the . . . contract, does not depend on actual knowledge of the terms in the contract . . ., but focuses instead on the opportunity for such knowledge." De La Mota Estrella v. Royal Caribbean Cruise Lines, Inc., 2006 WL 2601657, at *3 (D.P.R.2006) (quotation marks and citations omitted).

**Civil No. 09-1366 (GAG)**                                11

a claim of implied waiver.[6] In applying the facts of this case to the factors recognized by the First Circuit, the court finds that the actions of the Knights Defendants do not meet the high standard required when finding an implied waiver of arbitration. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an *allegation of waiver*, delay, or a like defense to arbitrability." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. at 24-25 (emphasis added). "Waiver is not to be lightly inferred, and mere delay in seeking arbitration without some resultant prejudice to a party cannot carry the day." Creative Solutions Group, Inc. v. Pentzer Corp., 252 F.3d 28, 32 (1st Cir.2001) (quotation omitted).

  Plaintiffs contend that the Knight's Defendants' failure to mention the DRC when they first brought their claims to their attention should estop them from now enforcing the clause. "There are no per se rules as to the length of delay necessary to amount to waiver." Restoration Pres. Masonry, Inc. v. Grove Europe Ltd., 325 F.3d 61, (1st Cir. 2003); see J & S Constr. Co., Inc. v. Travelers Indem. Co., 520 F.2d 809 (1st Cir. 1975) (thirteen month delay and participation in discovery was not enough to constitute a showing of prejudice). "The length of delay must be evaluated in the context of litigation activities engaged in during that time." Restoration Pres. Masonry, Inc., 325

---

[6] The court listed a number of factors that are traditionally considered:

> [W]hether the party has actually participated in the lawsuit or has taken other action inconsistent with his right, ... whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit by the time an intention to arbitrate was communicated by the defendant to the plaintiff, ... whether there has been a long delay in seeking a stay or whether the enforcement of arbitration was brought up when the trial was near at hand .... Other relevant factors are whether the defendants have invoked the jurisdiction of the court by filing a counterclaim without asking for a stay of the proceedings, ... whether important intervening steps (e.g., taking advantage of judicial discovery procedures not available in arbitration . . .) had taken place, . . . and whether the other party was affected, misled, or prejudiced by the delay . . . .

In re Citigroup, Inc., 376 F.3d 24, 26 (1st Cir. 2004) (citations omitted).

**Civil No. 09-1366 (GAG)**                                    12

F.3d at 6 (citing Creative Solutions Group, Inc. v. Pentzer Corp., 252 F.3d at 33 (waiver not found when no litigation activity occurred other than request for production); Jones Motor Co. v. Teamsters Local Union No. 633, 671 F.2d 38, 42 (1st Cir.1982) (waiver found when party seeking arbitration engaged in deposition-taking, a pre-trial conference, cross-motions for summary judgment, and oral argument)). While the Plaintiffs point out that there has been a long delay between presenting their claims and the Knights Defendants' Motion to Dismiss, they do not allege that the Knights Defendants have engaged in any litigation activities inconsistent with an intention to arbitrate during this time. As the First Circuit pointed out in Creative Solutions, such facts could hardly give rise to the notion that "the litigation machinery had been substantially invoked and the parties were well into preparation of a lawsuit by the time an intention to arbitrate was communicated[. . . ]" 252 F.3d at 33 (quotation omitted). Further, the Knights Defendants correctly point out that the unsubstantiated claim of "considerable expenses" is not enough to demonstrate prejudice as a result of the Knights Defendant's delay in seeking arbitration. See id. at 33 (finding legal expense incurred by plaintiff, unpersuasive as grounds for waiver).

Based on the above analysis, the court finds that the Knights Defendants did not implicitly waive their right to enforce the arbitration provision as found in the DRC.

Finally, Plaintiffs argue that they should not be compelled to arbitrate any of their claims as this would force them to fraction their case. (Docket No. 73 at 10.) Plaintiffs contend that their claims against co-defendant Evaristo González-Aponte are not subject to the arbitration provision, and therefore they would be forced to fraction their case and litigate some claims while arbitrating others. The Knights Defendants correctly recognize that the First Circuit has found that a non-signatory such as co-defendant González-Aponte can in fact compel arbitration based on an arbitration agreement signed by a claimant. "[F]ederal courts generally have been willing to estop a signatory from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed.." Intergen N.V. v. Grina, 344 F.3d at 145 (quotation omitted). All of the allegations against González-Aponte are intertwined with the contract formed between the Plaintiffs and the Knights of Columbus.

**Civil No. 09-1366 (GAG)**                    13

Additionally, the language of the DRC expressly covers claims against agents of the Knights of Columbus and, therefore, would encompass any claims against González-Aponte arising out of the relationship created by the contract for financial products. See supra note 4.

Because these claims may also be subject to the arbitration provision, Plaintiffs will not be compelled to fraction their case through the arbitration of their claims and therefore would not be further burdened by submitting their claims to arbitration.

Therefore, based upon the above assessment of the applicable law the court **GRANTS** Defendants Motion to Compel Arbitration.

### B.   Motions to Dismiss

The Knights Defendants, joined by co-defendants Popular; Doral; Westernbank; and RG moved for dismissal of the remaining claims based on a lack of subject matter jurisdiction. Moreover, they argue that each of the remaining claims arises under the laws of the Commonwealth of Puerto Rico and therefore have no independent basis for federal subject matter jurisdiction. Instead, such claims must be entertained through supplemental jurisdiction brought pursuant to 28 U.S.C §1367(a).

In light of the courts granting of the Knights Defendants' Motion to Compel Arbitration, the remaining claims which Plaintiffs raise have no basis for federal jurisdiction. Section 3 of the FAA requires that where issues before the court are arbitrable, the court shall "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. "However, a court may dismiss, rather than stay, a case when all of the issues before the court are arbitrable." Bercovitch v. Baldwin School, Inc., 133 F.3d 141, 156 & n. 21 (1st Cir.1998) (finding that where all federal causes of action are arbitrable and the remaining claim only has pendent jurisdiction, the district court "has discretion to dismiss the entire action.") Because the court has found all of the claims arising under federal law to be arbitrable, the pendent state law claims have no independent grounds to retain federal jurisdiction. Therefore, the court must dismiss these claims for lack of subject matter jurisdiction.

Based upon the above assessment of the applicable law the court **GRANTS** Defendants'

**Civil No. 09-1366 (GAG)**  14

Motions to Dismiss.

### III. Conclusion

For the foregoing reasons, the court **GRANTS** defendants' Motion to Compel Arbitration (Docket No. 38) and consequently **GRANTS** defendants' Motions to Dismiss (Docket Nos. 38, 39, 56, 59, 63.)

**SO ORDERED**

In San Juan, Puerto Rico this 24th day of September, 2009.

                                            *S/Gustavo A. Gelpí*
                                            GUSTAVO A. GELPÍ
                                        United States District Judge